**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IULIIA PAVLOVA,<br><br>        Petitioner,<br><br>    v.<br><br>MARKWAYNE MULLIN, ET AL.,<br><br>        Respondents. | Case No. 5:26-cv-01756-DMK<br><br>**MEMORANDUM AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.    PROCEDURAL HISTORY

On April 9, 2026, Petitioner Iuliia Pavlova, an immigration detainee, filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"), challenging her detention at the Adelanto Detention Facility.  ECF 1.  On April 17, 2026, Respondents Markwayne Mullin, Secretary of U.S. Department of Homeland Security, the U.S. Department of Homeland Security, Todd Blanche, in his official capacity as Acting Attorney General of the United States, Todd Lyons, Acting

Director of U.S. Immigration and Customs Enforcement, and the Warden of the Adelanto Detention Facility, filed an Answer to the Petition.  ECF 8.  **For the reasons set forth below, the Court grants the Petition and orders immediate release.**

## II.    FACTUAL BACKGROUND

The Petition alleges the following facts, which Respondents have not disputed.  Petitioner is a citizen of Russia who entered the United States on approximately January 7, 2023, at the Brownsville, Texas port of entry.  ECF 1, ¶ 19.  Shortly after entry, Petitioner was released, and eventually relocated to the Orange County, California area.  *Id.* at ¶ 20.  Following her release, Petitioner filed for asylum, completed her required check-ins, wore GPS monitoring devices, and completed the other conditions of release.  *Id.*

On or about March 16, 2026, Petitioner was arrested in Santa Ana, California, during a check-in appointment with Immigration and Customs Enforcement.  *Id.* at ¶ 21.  Prior to her arrest, Petitioner was not presented with any document setting forth the basis for her detention, and she did not receive a pre-deprivation interview where she could confront the facts justifying her detention.  *Id.* at ¶¶ 22-24.  Petitioner has since been transferred to the Adelanto Detention Center, where she remains.  *Id.* at ¶ 21.

## III.   PETITIONER'S CLAIM

Petitioner alleges a single claim of violation of her procedural due process rights under the Fifth Amendment, based on her arrest without notice or a pre-deprivation hearing.  *Id.* at ¶¶ 36–38.  Petitioner seeks immediate release from custody and an order prohibiting her re-detention without a pre-deprivation hearing at which the Government has to bear the burden of proof by clear and convincing evidence to show

2

that Petitioner is a danger or a flight risk.  *Id.* at 12–13 (Prayer).  In the alternative, Petitioner seeks a bond hearing at which the Government has to bear the burden of proof by clear and convincing evidence to show that Petitioner is a danger or a flight risk.  *Id.* at 13.

## IV.    LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  *See* U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  *See, e.g., Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the *Mathews* test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see also id.* at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## V.   ANALYSIS

Here, the Court finds that the instant Petition should be granted, pursuant to the *Mathews* test.

### A.   *Mathews* Factors

#### 1.   Private Interest

First, Respondents do not dispute that Petitioner entered the United States on approximately January 7, 2023, whereupon she was detained, and then released from physical custody shortly thereafter. ECF 1 at ¶¶ 19, 20.  It is further undisputed that since that time, Petitioner has been fully and consistently compliant with all the conditions of her release since January 2023.  *Id.* at ¶ 20.  Moreover, Respondents do not dispute that prior to Petitioner's arrest on March 16, 2026, she was not presented with any document setting forth the basis for her detention; she did not receive a pre-deprivation interview where she could confront the facts justifying her detention; and she has not received a bond hearing to determine whether she presents a flight risk or danger to the community.  *Id.* at ¶¶ 22–24.

Based on these facts, the Court concludes that once Petitioner was released from custody on conditions, she acquired "a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F.Supp.3d

1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

2.    Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, Respondents do not dispute that Petitioner was detained without notice or a pre-deprivation hearing. Because the government failed to provide Petitioner with a pre-deprivation hearing, however, there is an unacceptably high risk that the government might have erroneously deprived Petitioner of her liberty interest.

The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Here, Petitioner has not been afforded any process to determine whether her detention, in fact, advances either purpose. To the contrary, the Petition suggests that Petitioner is not a flight risk or danger, insofar as Petitioner was initially released from custody, and has therefore already demonstrated to the satisfaction of immigration officials that her release would not pose a

danger to property or persons, and she is likely to appear for any future proceeding. *See Fernandez Lopez v. Wofford*, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

While Respondents have brought to the Court's attention that a domestic violence restraining order was entered against Petition on January 29, 2026, they have not offered any explanation or argument regarding whether or how the entry of this restraining order should impact the Court's analysis regarding whether Petitioner's right to due process was violated when she was detained absent any notice or pre-deprivation hearing.[1]  ECF 8.

As such, the Court concludes on the record before it that there is a high risk that the lack of pre-deprivation process afforded to Petitioner in this instance has resulted in Petitioner's unnecessary detention.

### 3.  Government Interest

As to the third *Mathews* factor, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens without a pre-detention hearing.  "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976,

---

[1] "In our adversarial system of adjudication, we follow the principle of party presentation" meaning that "in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified).  Further, "as a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (citation modified).  In our adversarial system, the judge does not act as inquisitor, conducting the "legal investigation himself." *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991).

994 (9th Cir. 2017).

Here, as discussed above, the fact that Petitioner was paroled in the first instance establishes that the government has already been satisfied that her release will not pose a danger to property or persons, and that she is likely to appear for any future proceeding. Thus, this factor also militates in favor of finding that Petitioner's continued detention violates her right to procedural due process.

## B. Petitioner's Immediate Release is Warranted

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the government's lack of constitutionally adequate procedures has resulted in her unnecessary detention, and the government has no legitimate interest in detaining previously paroled noncitizens without a pre-detention hearing. The Court therefore concludes that Petitioner's arrest on March 16, 2026, and subsequent detention to date, without notice or a pre-deprivation hearing, violates her procedural due process rights. *See, e.g., Mourey v. Bowen*, 2026 WL 467567, at \*4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in *Mathews*, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); *Fernandez Lopez v. Wofford*, 2025 WL 2959319, at \*6 (E.D. Cal. Oct. 17, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court

7

concludes that "Petitioner's release is necessary to return [Petitioner] to the status quo." *Nazarian v. Noem*, 2025 WL 3236209, at \*7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). Thus, the status quo here would be Petitioner's prior release on conditions prior to her current re-detention—namely, release from custody. *See Nazarian*, 2025 WL 3236209, at \*7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."); *Esmail v. Noem*, 2025 WL 3030590, at \*6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The Court also concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. *See, e.g., Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. *Perez v. McAleenan*, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance

and/or the safety of the community. *See, e.g., Mourey*, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

## VI.   ATTORNEY'S FEES

Petitioner requests costs and reasonable attorney's fees in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. ECF 1 at 13.  The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within thirty days of final judgment in this action.  *See* 28 U.S.C. § 2412(d)(1)(B).

## VII.   ORDER

Based on the foregoing, the Court grants the Petition as follows:

(1) Respondents must release Petitioner from custody immediately on Petitioner's prior conditions of release;

(2) Respondents must return any property and paperwork seized from Petitioner in the course of her arrest and detention;

(3) Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation hearing before an Immigration Judge, at which the government bears the burden of proving by clear and convincing evidence that she is a danger to the community or a flight risk, and that no condition or combination of

conditions could reasonably assure Petitioner's future appearance and/or the safety of the community; and

(4) Respondents shall file a notice of compliance no later than **May 15, 2026**, regarding their compliance with this Order.

DATED:   May 13, 2026

_____
HON. DIANA M. KWOK
UNITED STATES MAGISTRATE JUDGE

10